Christopher DORCH, Petitioner–
Appellant,

v.

David SMITH, Warden, Respondent–
Appellee.

No. 02–2237.

United States Court of Appeals,
Sixth Circuit.

June 25, 2004.

Rehearing En Banc Denied Sept. 9, 2004.

Christopher Dorch, Detroit, MI, pro se.

Brad H. Beaver, Asst. Atty. General, Office of the Attorney General, Lansing, MI, for Respondent–Appellee.

Before: SILER, DAUGHTREY and SUTTON, Circuit Judges.

SUTTON, Circuit Judge.

Christopher Dorch, who is serving a life sentence in a Michigan prison for a 1989 murder, appeals the district court's denial of his petition for a writ of habeas corpus. Because Dorch procedurally defaulted six of the nine claims raised in his habeas petition and because the district court properly rejected the remaining three claims on the merits, we affirm.

I.

On the night of November 25, 1989, David Ivory and Gregory Coffer were selling crack cocaine out of the Flint, Michigan apartment of Lemoyne "Red" Burke.

According to Coffer, Burke came to the apartment that night with a customer whom Coffer did not know. At some point, the customer asked to use the bathroom, then emerged from the bathroom holding a pistol with a potato on the end of the barrel. The customer fired one shot from the pistol at Ivory's head, killing him. then ordered Coffer to lie face down on the floor while Burke gathered the drugs and cash. Using a small pocket knife, the customer cut Coffer's neck, stuck the knife into the side of Coffer's head and fled with Burke.

After waiting for the customer and Burke to leave, Coffer went to a nearby store to phone the police. When the police arrived, Coffer gave them a description of the shooter.

In April 1990. police asked Coffer to view a photo lineup to identify Ivory's killer. Police included six photos in the lineup. Coffer identified Dorch's photo, but indicated that Dorch's hair looked different that night. Dorch's counsel objected to the photo array, arguing that it was unduly suggestive because Dorch's photo was the only one without facial hair (and Coffer had earlier described the shooter as having no facial hair) and because only three of the six black men portrayed in the photos were dark-skinned black men (and Coffer had earlier described the shooter as being dark-skinned).

On September 14, 1992, police arrested Dorch for Ivory's murder. The State charged Dorch with first degree murder, assault with intent to commit murder and possession of a firearm during the commission of a felony.

At trial, Coffer testified that Dorch was the customer who had stabbed him and shot Ivory the night of November 25, 1989. Two other witnesses, Sylvia Elbert and Gregory Woodson, both of whom knew Dorch before the night of the murder, testified that they had seen Dorch around Burke's apartment at the time of the shooting. Finally, Dorch's pre-trial cellmate, Windrick Taylor, testified that Dorch admitted shooting a man in the face during a crack house robbery using a pistol equipped with a potato as a silencer. In contrast, Dorch testified that he was celebrating Thanksgiving with his family in Detroit at the time of the murder and that he stopped selling drugs in Flint in October 1989.

Apparently believing the testimony of the State's witnesses and not the testimony of Dorch, a jury convicted Dorch on all counts. The court sentenced Dorch to life in prison without the possibility of parole for the murder conviction, along with consecutive sentences of ten-to-twenty years for the assault conviction and two years for the firearm conviction.

Immediately after the jury returned its verdict, Dorch's counsel requested and received a hearing on the suggestiveness of the photo lineup. The court heard testimony from (among others) the attorney who represented Dorch at the photo lineup, from Coffer, and from a clinical psychologist regarding the suggestibility of the lineup.

The trial court concluded that the photographic display was not unduly suggestive and that the identification was reliable. While acknowledging imperfections in the array of photos used in Dorch's case, the court found that Coffer had spent time with Dorch before the assault, that Coffer had "an excellent opportunity to observe" the shooter and that Coffer's ability to differentiate between Dorch's changes in hairstyle bolstered his testimony.

Dorch appealed his conviction and sentence to the Michigan Court of Appeals. Three of the issues raised in his appellate brief would later appear in his federal habeas petition:

*Suggestive Lineup:* "Was Mr. Dorch denied his due process right to a fair trial, where the identification of him by the only eyewitness to testify at trial was the product of a suggestive photo show-up, which singled out Mr. Dorch as the only person without facial hair?" JA 252.

*Ineffective Assistance/Failure to Present Expert Testimony:* "Even if the identification was admissible, was Mr. Dorch denied the effective assistance of counsel, where counsel failed to present expert testimony at trial on the unreliability of eyewitness identification in order to attack the credibility and weight to be given to that identification?" *Id.*

*Prosecutorial Misconduct:* "Was Defendant denied his due process right to a fair trial as a result of the misconduct of the prosecutor?" *Id.*

The court of appeals affirmed Dorch's conviction in an unpublished opinion. *People v. Dorch,* No. 166089, 1996 WL 33349169 (Mich.Ct.App. Oct.18, 1996). In rejecting Dorch's "suggestive lineup" claim, the court first identified the correct legal test: "In order to sustain [such] a due process challenge, a defendant must show that the pretrial identification procedure was so suggestive in light of the totality of the circumstances that it led to a substantial likelihood of misidentification." *Id.* at *1. It then held that "the mere fact that a defendant was the only person with ... [facial hair] ... in a lineup" does not make the lineup "unduly suggestive." *Id.* (citing *People v. Hughes,* 24 Mich.App. 223, 180 N.W.2d 66, 67 (Mich.Ct.App.1970) (citing *Stovall v. Denno,* 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967))).

The court of appeals also rejected Dorch's Ineffective Assistance/Failure to Present Expert Testimony claim on the merits. "A defendant who claims he has been denied the effective assistance of counsel," the court correctly explained,

"must establish that (1) the performance of his counsel was below an objective standard of reasonableness under the prevailing professional norms and (2) that a reasonable probability exists that, in the absence of counsel's unprofessional errors, the outcome of the proceedings would have been different." *Id.* at *2 (citing *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). Dorch could not satisfy these two elements, the court held, because the failure to call an expert witness to challenge Coffer's photographic identification of Dorch did not deprive Dorch of "a substantial defense[.] since [Dorch's counsel] presented several witnesses who testified as to [Dorch's] whereabouts on the weekend of the incident" and since "trial counsel cross-examined Coffer regarding [inconsistencies in] his photographic identification of [Dorch]." *Id.*

Lastly, the court of appeals held that Dorch had forfeited his "prosecutorial misconduct" claim by failing to object at trial. "Because [Dorch] failed to object" to the allegedly improper statements made by the prosecutor during his closing argument, the court explained, "consideration of the alleged ... misconduct is limited to whether our failure to review would result in a miscarriage of justice." *Id.* at *3. The court concluded that no miscarriage of justice would result and accordingly declined to review the defaulted claim.

In the wake of the court of appeals' decision. Dorch filed a motion for rehearing. The motion raised a new claim (one that would later appear in Dorch's federal habeas petition):

*Ineffective Assistance/Failure to Demand a Corporeal Lineup:* Was Dorch denied effective assistance of counsel where defense counsel failed to "object[ ] to the photo showup on the ground that

Mr. Dorch was 'readily available' for a corporeal lineup"? JA 205.

The court of appeals denied the motion for rehearing and appeared to resolve the new claim on the merits. "[I]n lieu of granting rehearing." the court stated, "we have determined defendant's additional issue is without merit because defendant was not readily available." JA 198. The Michigan Supreme Court followed suit, denying leave to appeal.

Having failed to persuade the Michigan appellate courts to grant him relief. Dorch returned to the trial court and filed a motion for relief from judgment. In this filing, Dorch's motion raised two new claims (also claims that would later appear in his federal habeas petition):

*Ineffective Assistance/Introducing Evidence of Drug Dealing:* "[Were] Defendant's [constitutional rights] violated where . . . counsel was ineffective where evidence of other criminality [was] introduced" to support his "alibi defense?" Mich. JA 115.

*Verdict Against the Great Weight of the Evidence:* "Did [the] trial court abuse its [ ] discretion in denying Defendant's motion for a new trial as the verdict was against the great weight of the evidence?" *Id.*

The trial court denied the motion. Michigan law "prohibits granting of relief," the court explained, "where the motion alleges grounds for relief other than jurisdictional defects which could have been raised on appeal unless [the] defendant demonstrates good cause . . . and actual prejudice." JA 511. "Having failed to comply with" this requirement, the court concluded, "defendant is not entitled to relief from judgment." JA 512. The Michigan Court of Appeals denied Dorch's application for leave to appeal on the same grounds. JA 99.

Dorch then filed a motion for rehearing with the court of appeals. He again raised a new claim:

*Ineffective Assistance/Failure To Advise Dorch of Possible Plea Bargain:* Counsel failed properly to advise Mr. Dorch during plea bargaining proceedings. JA 26.

The court of appeals denied this motion. Dorch next sought leave to appeal the denial of his post-conviction motion to the Michigan Supreme Court. Here, too, he raised a new claim:

*Due Process/ Denial of Motion for New Trial:* Mr. Dorch was denied due process under Amendments VI and XIV of the U.S. Constitution where the trial court invaded the province of the jury in denying Mr. Dorch's motion for a new trial.

Once again the Michigan Supreme Court denied leave to appeal.

Dorch next filed a timely petition for a writ of habeas corpus in the United States District Court for the Eastern District of Michigan. Dorch's federal habeas petition included nine claims. Listed in the order in which Dorch raised them in state court, the first eight are: (1) Suggestive Lineup; (2) Ineffective Assistance of Counsel/Failure to Present Expert Testimony; (3) Prosecutorial Misconduct; (4) Ineffective Assistance/Failure to Demand a Corporeal Lineup; (5) Ineffective Assistance/Introducing Evidence of Drug Dealing; (6) Verdict Against the Weight of the Evidence; (7) Ineffective Assistance/Failure To Advise Dorch of Possible Plea Bargain; and (8) Due Process/ Denial of Motion for New Trial. The ninth claim, which Dorch never presented to any state court, is:

*Ineffective Assistance/Failure to Renew Dorch's Motion to Dismiss:* "Counsel failed to renew the motion to dismiss in light of new information revealed at the post-trial hearing." JA 59.

The State answered, arguing (1) that the state court did not unreasonably apply clearly-established Supreme Court case law in rejecting Dorch's Suggestive Lineup claim and his Ineffective Assistance of Counsel/Failure to Present Expert Testimony claim, and (2) that all of Dorch's remaining claims were procedurally defaulted.

On September 11, 2002, Judge Tarnow denied Dorch's petition for a writ of habeas corpus, issuing a 38–page opinion that addressed all of Dorch's claims on the merits. The district court first rejected Dorch's Suggestive Lineup claim. Dorch "failed to establish that the photo array in this case was unduly suggestive," the court explained, because "[t]here is no absolute requirement that other persons in a lineup be nearly identical to the suspect," and because Dorch "failed to allege that there were major discrepancies in age, weight, clothing, or hairstyle between his photograph and that of the other participants in the array." D. Ct. Op. at 14. "More importantly," the court continued, even "assuming that the photo array was unduly suggestive," Dorch "failed to show, under the totality of circumstances in [his] case, that the suggestiveness led to a substantial likelihood of an irreparable misidentification" because "Coffer's identification of [Dorch] as the shooter was reliable, where Coffer got a good look at [Dorch] during the crime at close range, for a matter of minutes, and unequivocally identified [Dorch] at his trial." Id. at 14—15. "Finally," the court added, "[b]ecause of the other evidence linking [Dorch] to this crime"—particularly, Sylvia Elbert's, Gregory Woodson's, and Windrick Taylor's testimony—"the possibility of misidentification is low in this case." Id. at 15—16.

The district court rejected Dorch's Ineffective Assistance of Counsel/Failure to Present Expert Testimony claim on the merits because "counsel's decision not to call an expert witness in the field of expert identification [was] a tactical one that fell within the range of reasonable choices." Id. at 32. "Furthermore, as the Michigan Court of Appeals indicated in its opinion, defense counsel cross-examined Coffer about his prior inconsistencies and emphasized the problems with the identification of petitioner in closing argument." Id.

The district court concluded that Dorch's Ineffective Assistance/Failure to Demand Corporeal Lineup claim was "completely without merit." Id. art 29. Because "petitioner was not in custody at the time of the photographic lineup" and because Dorch "was also not under arrest for this offense, he could not be compelled to participate in a corporeal lineup." Id. at 30. Since, under these circumstances. Michigan law did not require the use of a corporeal lineup, Dorch's counsel was not ineffective by failing to move to suppress the photo identification on the ground that Dorch was "available" for a corporeal identification.

Following the judgment denying his petition, Dorch received a certificate of appealability from the district court on all of the claims raised in his petition. This appeal followed, and we now give fresh review to the district court's decision denying Dorch a writ of habeas corpus. *Northrop v. Trippett*, 265 F.3d 372, 376 (6th Cir.2001).

## II.

When a habeas petitioner procedurally defaults a federal claim in state court, the federal courts will not review the claim unless the petitioner can demonstrate that cause for the default exists and that actual prejudice resulted, or that "failure to consider the claim [ ] will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Seymour v. Walker*, 224 F.3d 542, 549—50

(6th Cir.2000). In view of this requirement, we may not review six of the nine claims raised in Dorch's habeas petition. Dorch defaulted his Prosecutorial Misconduct claim by failing to raise it at his trial, as the Michigan Court of Appeals concluded in declining to review the claim on the merits. *See Paprocki v. Foltz*, 869 F.2d 281, 284—85 (6th Cir.1989) (claim is procedurally defaulted when state court denies it for failure to object at trial, even if state appellate court alludes to the merits of the claim in determining whether a manifest injustice would result from declining to review the claim). He defaulted his Ineffective Assistance of Counsel/Introducing Evidence of Drug Dealing claim and his Verdict Against the Weight of the Evidence claim because he failed to raise them during his direct appeal and the Michigan courts later declined to review the claims on that ground. *See Simpson v. Jones*, 238 F.3d 399, 407 (6th Cir.2000) (claims procedurally defaulted when last Michigan court to review the claim denies it failure to comply with a state procedural rule). He defaulted his Ineffective Assistance/Failure to Advise of a Possible Plea Bargain claim and his Due Process/Denial of Motion for New Trial claim by not only failing to raise them on direct appeal, but also by failing to raise them in his motion for relief from judgment and in his appeal from the denial of his motion for relief and by raising them for the first time in his motion for rehearing and application for leave to appeal to the Michigan Supreme Court, respectively. And Dorch's Ineffective Assistance/Failure to Renew Motion to Dismiss claim was never raised at any stage in state court, which means that it is unexhausted (because Dorch failed fairly to present it to the state courts, *see* 28 U.S.C. § 2254(b)(1)(A)) and procedurally defaulted (because Dorch may no longer present it to the state courts, *see* Mich. Ct. R. 6.502(G), 7.205(F)). Since Dorch has not established cause and prejudice, or a miscarriage of justice, as to any of these claims, we may not review them.

■ The State asserts that Dorch also procedurally defaulted his Ineffective Assistance/Failure to Demand Corporeal Lineup claim. According to the State, the claim was "not raised in the Court of Appeals during his appeal of right." Mich. Br. at 6. But as Dorch attentively observes in his *pro se* brief and as the State neglects to mention, Dorch raised this claim on direct appeal through a motion for rehearing filed in the Michigan Court of Appeals. The Court of Appeals decided the claim on the merits, and Dorch has asserted the claim at every stage since then. This claim, accordingly, is not procedurally defaulted.

### III.

■ Of the three claims that we may review on the merits—the Suggestive Lineup claim, the Ineffective Assistance/Failure to Present Expert Testimony claim and the Ineffective Assistance/Failure to Demand Corporeal Lineup claim—none entitles Dorch to relief. Under AEDPA's increasingly-familiar standard for reviewing habeas claims decided on the merits by state courts, we may grant relief if the state court's adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); *see Williams v. Taylor*, 529 U.S. 362, 405, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

The district court properly denied all three claims on the merits. In doing so, the court not only showed that they were unsupported by clearly-established Supreme Court precedent but also showed that they were unsupported by lower-federal-court

decisions. Given AEDPA's daunting standard of review, given the district court's detailed analysis and given petitioner's failure to show that clearly-established Supreme Court precedent supports his claims, we affirm the denial of these three claims on the basis of the district court's opinion.

## IV.

For the foregoing reasons and for the reasons stated in the district court's opinion, we affirm the district court's judgment denying petitioner a writ of habeas corpus.